Filed 7/20/23  Kramer v. Park Central Towers Owners Assn. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BRIAN KRAMER,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>PARK CENTRAL TOWERS OWNERS ASSOCIATION,<br><br>  Defendant and Respondent. | D080467<br><br><br>  (Super. Ct. No. 37-2021-00014468-CU-CO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, James A. Mangione, Judge.  Affirmed.

Law Offices of Rodney L. Donohoo, Rodney L. Donohoo, and Kevin T. Rhine for Plaintiff and Appellant.

Freeman Mathis & Gary, David G. Molinari, and Christian E. Foy Nagy for Defendant and Respondent.

In 2018, Brian Kramer purchased one of two penthouse units in a 38-unit condominium complex in the Bankers Hill neighborhood of San Diego. Twenty-three years earlier (in 1995), the homeowners association had amended the governing Covenants, Conditions, and Restrictions (CC&R's) to require owners of the larger penthouse units to pay double the monthly

assessments paid by the owners of each of the other 36 units. Kramer paid the higher assessments for his penthouse unit, but then in 2021, he sued the association for declaratory relief, injunctive relief, and money had and received, alleging that the unequal assessments were unreasonable and therefore unenforceable under Civil Code section 5975, subdivision (a). Ruling on demurrer, the trial court found that Kramer's claims were all barred by the four-year statute of limitations for challenging the validity of the 1995 amendment to the recorded CC&R's. (Code Civ. Proc., § 343.) Kramer appeals from the resulting judgment of dismissal.

On the statute of limitations issue, we conclude that the continuous accrual doctrine for recurring payment obligations applies here and allows Kramer to challenge the allegedly unlawful imposition of any monthly assessments that came due within the limitations period or thereafter. On the merits, however, we hold that the facts alleged in Kramer's complaint are legally insufficient to state a claim for violation of Civil Code section 5975, subdivision (a). Disregarding purely conclusory allegations, Kramer's complaint does not state adequate facts to allege that the higher monthly assessments for the larger penthouse units are wholly arbitrary, violate public policy, or impose burdens that substantially outweigh the benefits to the development as a whole. Accordingly, we affirm the judgment of dismissal.

FACTUAL AND PROCEDURAL BACKGROUND

On de novo review of a demurrer ruling, we assume the truth of all facts properly pleaded or reasonably inferred from the complaint, but not mere contentions, deductions, or conclusions of law. (*New Livable California v. Assn. of Bay Area Governments* (2020) 59 Cal.App.5th 709, 714.) We may also consider judicially noticeable facts which the trial court did notice or

2

properly could have noticed.[1] (*City of Chula Vista v. County of San Diego* (1994) 23 Cal.App.4th 1713, 1719.)

In August 2018, Kramer purchased one of two penthouse units in Park Central Towers, a 38-unit condominium complex in the Bankers Hill neighborhood of San Diego. The complex is governed by the Park Central Towers Association (Association) and is a common interest development under the Davis-Stirling Common Interest Development Act (Davis-Stirling Act). (Civ. Code, § 4000 et seq.)

The two penthouse units are each approximately 2,913 square feet in size. The other 36 units range in size from approximately 1,300 square feet to 1,700 square feet. The two penthouse units also have two balconies, whereas the others have only one. According to the complaint, Kramer "is prevented from regularly using the majority of the larger balcony as it is designated as an emergency escape route" and thus "the useable portion of each of the penthouses' balconies is nearly identical to that of the remaining units." The complaint further alleges that each of the units "has access to" the same amount of common area and receives "the exact same common services."

From 1970 to 1995, the Association's CC&R's required all owners of all units, including the penthouse units, to pay equal monthly assessments. In 1995, however, the Association amended the recorded CC&R's to require the two penthouse units to pay double the monthly fees of the other 36 units.

---

[1]     On our own motion, we take judicial notice of the recorded CC&R's as amended in 1995. The Association sought judicial notice of this document in the trial court, and courts may take judicial notice of recorded documents and their legal effect. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264–267, overruled on other grounds in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13.)

Specifically, the amended CC&R's state: "Each of the 36 Units, not including the two (2) penthouse Units, shall each be subject to an assessment in equal amounts. The two (2) penthouse Units shall be subject to assessments in an amount equal to two-times the amount paid by the other 36 Units." Owners of all units, including the penthouse units, are entitled to one vote per unit.

The amended CC&R's provide that the assessments levied by the Association "shall be used exclusively to protect, enhance and maintain the recreation, health, safety and welfare of the residents of the Project and for the improvement, maintenance, replacement, repair and operation of the Common Area and the improvements and personal property in the Common Area that are owned or maintained by the Association . . . and for any other purpose that is for the benefit of all of the Owners in their use and enjoyment of the Project."

After purchasing his penthouse unit in August 2018, Kramer paid $1,380 per month in assessments to the Association. The owners of the 36 non-penthouse units each paid $726 per month during the same time period. The complaint does not explain why Kramer's monthly assessments were less than double those of the non-penthouse units.

In April 2021, nearly three years after Kramer purchased his penthouse unit and 26 years after the 1995 adoption of the amended CC&R's, Kramer sued the Association for declaratory relief, injunctive relief, and money had and received. Kramer alleged that the unequal allocation of assessments under the amended CC&R's was wholly arbitrary and unreasonable, and imposed a burden on the penthouse units that far outweighed any benefit. He sought "a judicial determination that the Amendment creating the current allocation of assessments is void, voidable, and/or unenforceable and that the Association may not continue to charge the

4

two penthouses, including the Kramer Unit, double the amount of monthly assessments as to the remaining 36 non-penthouse units." Kramer also sought corresponding injunctive relief and a refund of $23,562, the amount he claimed to have overpaid in the four years preceding his complaint.

The Association filed a demurrer asserting that (1) the claims were barred by the statute of limitations, (2) the complaint did not state facts sufficient to constitute a cause of action, and (3) Kramer had waived and was estopped from recovery on his claims. Kramer opposed the demurrer on all grounds.

The trial court sustained the demurrer without leave to amend solely on statute of limitations grounds. The court ruled that all of Kramer's claims were subject to a four-year statute of limitations, which began accruing when the 1995 amendment to the CC&R's was recorded. Accordingly, the court entered a judgment of dismissal.

DISCUSSION

I

As noted, the trial court concluded that Kramer's causes of action were all barred by the four-year statute of limitations for challenging the validity of the 1995 amendment to the recorded CC&R's. (Code Civ. Proc., § 343; *Costa Serena Owners Coalition v. Costa Serena Architectural Com.* (2009) 175 Cal.App.4th 1175, 1196.) On appeal, Kramer contends that because the assessment is a recurring, monthly obligation, the continuous accrual rule allows him to challenge its enforceability as to any amounts which came due within the limitations period or thereafter. On this point, we agree with Kramer.

It is "long settled that separate, recurring invasions of the same right can each trigger their own statute of limitations." (*Aryeh v. Canon Business*

5

*Solutions, Inc.* (2013) 55 Cal.4th 1185, 1198 (*Aryeh*).) "Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.' " (*Id.* at p. 1199.) "Because each new breach of such an obligation provides all the elements of a claim—wrongdoing, harm, and causation [citation]—each may be treated as an independently actionable wrong with its own time limit for recovery." (*Ibid.*) However, "the theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period." (*Ibid.*)

In *Howard Jarvis Taxpayers Association v. City of La Habra* (2001) 25 Cal.4th 809 (*Howard Jarvis*), plaintiffs challenged the validity of a municipal tax more than three years after it was adopted. (*Id.* at p. 813.) The Supreme Court held that the cause of action accrued when the tax was adopted, and the plaintiffs' challenge to the validity of the tax was untimely because the applicable limitations period was three years. (*Id.* at pp. 814–818.) Nevertheless, the court agreed with the plaintiffs "that if, as alleged, the tax is illegal, its continued imposition and collection is an ongoing violation, upon which the limitations period begins anew with each collection." (*Id.* at p. 812.) Even though the plaintiffs had "emphasized the allegedly improper enactment" of the tax throughout the proceedings, the Supreme Court concluded that they had "as well, complained of, and sought redress for, the City's continued collection of the allegedly unauthorized tax." (*Id.* at p. 819.) Applying the continuous accrual doctrine, the court ruled that "plaintiffs' failure to establish the tax's invalidity within three years of its enactment does not preclude them from complaining, on grounds of such invalidity, of the tax's continuing collection." (*Id.* at p. 822.)

6

We conclude that this reasoning applies here. Just as the statute of limitations had run on a challenge to the validity of the municipal tax in *Howard Jarvis*, the statute of limitations had run on Kramer's challenge to the validity of the 1995 amendment to the CC&R's before he filed suit. Yet as in *Howard Jarvis*, if the monthly assessments imposed on penthouse units are unreasonable and unenforceable under Civil Code section 5975, as Kramer alleges, then their "continued imposition and collection is an ongoing violation, upon which the limitations period begins anew with each collection." (*Howard Jarvis, supra*, 25 Cal.4th at p. 812.) Whatever the merits of Kramer's claims, we see no meaningful distinction between the continuing collection of the allegedly invalid tax in *Howard Jarvis* and the continuing collection of the allegedly invalid assessment here.

The Association appears to argue that the continuous accrual doctrine only applies to violations of a statute or fundamental state policy. But Kramer is alleging a statutory claim—that the unequal assessments are "unreasonable" in violation of Civil Code section 5975, subdivision (a). Moreover, although the continuous accrual doctrine has been applied to cases involving "an obligation to make periodic payments under California statutes or regulations" (*Hogar Dulce Hogar v. Community Development Commission* (2003) 110 Cal.App.4th 1288, 1295), no authority holds that the doctrine is *limited* to such cases. As the Supreme Court noted in *Aryeh, supra*, 55 Cal.4th at page 1200, the doctrine has also been applied to cases involving recurring contractual obligations, such as monthly rent payments (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1344) or monthly oil and gas lease payments (*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1388–1389). "The kinds of cases in which the continuous accrual theory have been applied—as discussed in

7

[*Aryeh*]—include a variety of instances in which the plaintiff asserted a right to, *or challenged the assessment of*, periodic payments *under contract or* under California statutes or regulations." (*Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 379, italics added.) We see no reason why this doctrine would not apply to allegedly unlawful monthly assessments charged to owners in a common interest development under the CC&R's.

## II

As a separate ground for its demurrer, the Association argued below that Kramer's complaint failed to allege sufficient facts to plead that the unequal assessments were arbitrary or unreasonable, and thus did not defeat the legal presumption in favor of their validity. On appeal, the Association continues to assert this argument as an alternative ground for affirming the judgment. We agree that Kramer's complaint does not adequately allege that the assessments on his larger penthouse unit are "unreasonable" within the meaning of Civil Code section 5975, subdivision (a). Because this is the legal basis for all of Kramer's claims, and he has failed to explain what additional facts he could allege to cure the defect by amendment, we affirm the judgment on this alternative ground.

In California, common interest developments are subject to the provisions of the Davis-Stirling Act. (Civ. Code, § 4000 et seq.) The Davis-Stirling Act includes the following provision for the enforcement of CC&R's in the project's recorded declaration: "The covenants and restrictions in the declaration shall be enforceable equitable servitudes, *unless unreasonable*, and shall inure to the benefit of and bind all owners of separate interests in the development." (Civ. Code, § 5975, subd. (a), italics added.)

8

"In choosing equitable servitude law as the standard for enforcing CC&R's in common interest developments, the Legislature has manifested a preference in favor of their enforcement." (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 380 (*Nahrstedt*).) Accordingly, use restrictions contained in a condominium development's recorded declaration are entitled to a "presumption of reasonableness" under Civil Code section 5975, subdivision (a)—and the party challenging them bears the burden of proving that they are unreasonable.[2] (*Ibid.*)

Applying this presumption, "courts must enforce the restriction unless the challenger can show that the restriction is unreasonable because it is arbitrary, violates a fundamental public policy, or imposes burdens on the use of the affected property that substantially outweigh the restriction's benefits." (*Nahrstedt*, *supra*, 8 Cal.4th at p. 389.) This presumption of validity promotes stability and predictability, ensures that prospective condominium owners may rely on the promises embodied in the recorded CC&R's, and protects all owners from unanticipated increases in association fees to fund the defense of legal challenges to recorded restrictions. (*Id.* at pp. 382–384.)

In *Cebular v. Cooper Arms Homeowners Association* (2006) 142 Cal.App.4th 106, the court applied the *Nahrstedt* presumption to a condominium unit owner's challenge to an unequal allocation of assessments. There, the assessments were based on each unit owner's proportional share of voting rights, which varied widely. (*Id.* at p. 110.) The plaintiff argued that this method of allocation was arbitrary because it was "not based on criteria such as value, square footage, elevation, or ocean views." (*Id.* at p. 120.)

---

[2]    At the time of the *Nahrstedt* decision, Civil Code section 5975 was Civil Code section 1354.

9

After concluding that neither the Davis-Stirling Act nor the California Code of Regulations prohibits unequal assessments (*ibid*.), the court ruled that allocating assessments based on voting power was "not wholly arbitrary" under *Nahrstedt*. (*Id*. at p. 121.) The court emphasized that "the assessment method is not unreasonable merely because plaintiff disagrees with its wisdom. Our Supreme Court has explained, '[W]hen enforcing equitable servitudes, courts are generally disinclined to question the wisdom of agreed-to-restrictions.' " (*Id*. at p. 122, quoting *Nahrstedt*, *supra*, 8 Cal.4th at p. 381.)

We similarly conclude that Kramer has failed to allege facts sufficient to plead that the higher assessments on the two Park Central penthouse units are wholly arbitrary, violate a fundamental public policy, or impose burdens on the use of the affected property that substantially outweigh the benefits. (*Nahrstedt*, *supra*, 8 Cal.4th at p. 389.) "[A]ssessments may be allocated among the individually owned properties on any reasonable basis . . . ." (Rest.3d Property, Servitudes (2000) § 6.5(1)(b).) "Reasonable allocation depends on the circumstances. Common methods of allocation include a flat rate per unit, lot, or parcel or a rate dependent on voting power in the association or based on the percentage interest in the common areas assigned to the individually owned property. Other possible bases include *size* or value of the individual property, *type of unit*, *length of the boundary between the individual property and the common property*, or proximity to common property or facilities." (*Id*. at com. c, italics added.)

Here, the Association allocated the assessments based on the type of unit—with the two penthouse units paying double the rate of the 36 non-penthouse units. According to the figures in the complaint itself, the two penthouse units are each about 2.24 times the size of the smallest non-

10

penthouse units (2,913 square feet versus 1,300 square feet) and 1.71 times the size of the largest non-penthouse units (2,913 square feet versus 1,700 square feet). Assessing the penthouse units at double the rate of the non-penthouse units roughly correlates with their relative size. In addition, these units are uniquely situated because they are "penthouse" units with a more desirable location on the top floor, and they each have two balconies instead of just one.[3]

Based on the facts alleged in the complaint itself, we conclude that the Association's decision to assess these penthouse units at twice the rate of other units was not "wholly arbitrary." (*Nahrstedt*, *supra*, 8 Cal.4th at p. 382.) There are genuine, significant differences between the penthouse and non-penthouse units that provide a rational basis for their differential treatment. It is not our proper function to "question the wisdom" of this decision. (*Id*. at p. 389.) Moreover, it was neither arbitrary nor unreasonable for the Association to treat all of the non-penthouse units equally, because the differences between those units are significantly more trivial than the differences between the penthouse and non-penthouse units. Exactitude is not required.

Kramer's complaint alleges that the unequal allocation of assessments "place[s] a burden on the Kramer Unit and other penthouse [unit] that far outweighs any benefit" because these units do not "receive any additional benefits by paying double the assessments as the other 36 units." Specifically, he complains that the higher assessments for penthouse units

---

[3]     Although Kramer's complaint alleges that he "is prevented from regularly using the majority of the larger balcony" because "it is designated as an emergency escape route," it does not explain what Kramer means by "regularly using" or what prevents him from using the balcony when there is no emergency.

bear no relationship to their expense to the Association, their voting power, or their "access" to common areas or services. But the question under *Nahrstedt* is whether the challenged restriction substantially outweighs any benefit "to the common interest development *as a whole*." (*Nahrstedt*, *supra*, 8 Cal.4th at p. 386, italics added.) Thus, allegations that merely refer to the benefit and burden *to the plaintiff*—"without any reference to the effect on the condominium development as a whole"—are "legally insufficient to overcome section [5975]'s presumption of the restriction's validity." (*Id.* at p. 387.) Kramer's complaint does not allege any facts supporting a claim that the burden of the unequal assessments substantially outweighs the benefit to the condominium development *as a whole*.

Kramer also cites no authority that condominium unit assessments must always bear some proportional relationship to voting power or "access" to common areas or common services. Moreover, Kramer's "access" argument ignores the fact that the common area of a condominium development generally includes the floors, walls, and ceilings of the individual units (except for the interior surfaces) and other structural portions of the building.[4] (Civ. Code, § 6564, subd. (b); see also Miller & Starr, Cal. Real Estate (4th ed. Dec. 2022 update) § 28:136 ["The cube of airspace in a condominium typically is surrounded by the structural portions of the building, which is common area."].) A larger unit logically derives a proportionately greater benefit from these structural parts of the common area. Thus, it is reasonable to allocate to the larger units a greater share of the cost of maintaining, insuring, and paying taxes on the common areas.

_____

[4] At oral argument, counsel for Kramer argued that the 1995 CC&Rs made the walls, floors, and ceilings of each unit part of the unit owner's separate property, but counsel was unable to cite any specific provision so stating. We have reviewed the CC&Rs and found no such provision.

This distinction is not arbitrary because it bears a "rational relationship to the protection, preservation, operation or purpose of the affected land." (*Nahrstedt*, *supra*, 8 Cal.4th at p. 381.)

Finally, we note that Kramer had actual and/or constructive notice of the higher assessments when he purchased his penthouse unit in 2018. (*Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 355 [purchaser has constructive notice of recorded CC&R's].) For nearly three decades, other owners have also purchased their own units in reliance on the existing allocation of assessments. As our Supreme Court made clear in *Nahrstedt*, courts should be reluctant to upset owners' expectations by invalidating the "promises embodied in the project's recorded CC&R's." (*Nahrstedt*, *supra*, 8 Cal.4th at p. 383.) Consistent enforcement of "the recorded declaration of CC&R's assures owners of a stable and predictable environment." (*Id*. at p. 384.) As a matter of law, Kramer has failed to allege sufficient facts to upset these settled expectations and defeat the presumption in favor of the validity of the 1995 amendment to the CC&R's.

Kramer argues that he should be granted leave to amend his complaint, but he has not explained what additional facts he could allege to state a valid claim. Thus, Kramer has failed to meet his burden of demonstrating how his complaint could be amended to cure the defect. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.)

DISPOSITION

The judgment of dismissal is affirmed. Respondent shall recover its costs on appeal.

BUCHANAN, Acting P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J.